# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**ADOLPH GARCIA, et al.,**

    Plaintiffs,

v.                                                  Case No.  8:12-cv-771-T-30TGW

**FIRST LIBERTY INSURANCE CORPORATION,**

    Defendant.

_____/

## <u>ORDER</u>

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment and Supporting Memorandum of Law (Dkt. 13) and Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment and Supporting Memorandum of Law (Dkt. 14).  The Court, having reviewed the motion, response, and being otherwise advised of the premises, concludes that the motion should be denied.

This is an action for damages arising out of an insurance policy Defendant First Liberty Insurance Corporation issued to Plaintiffs Adolph and Melissa Garcia.  Plaintiffs contend that their property suffered damages consistent with sinkhole activity; a covered cause of loss.  The issue before the Court on First Liberty's summary judgment motion on its counter claim is whether a 2011 amendment to the Florida statutory scheme governing sinkhole insurance that added a statutory definition of "structural damage" should be applied retroactively to the insurance policy at issue.  As this Court has recently held in a nearly

identical case, *Zawadzki v. Liberty Mutual Fire Ins. Co.*, 2012 WL 365645 (M.D. Fla. Aug. 23, 2012), the summary judgment motion should be denied because retroactive application of the 2011 statutory definition of "structural damage" would impair the Garcias' vested contractual rights under the policy. *See Bay Farms Corp. v. Great American Alliance Ins. Co.*, 835 F. Supp. 2d 1227 (M.D. Fla. 2011).

At all material times, the Garcias owned the property located at 7370 West Price Boulevard, North Port, Florida (the "subject property"). First Liberty insured the property under policy number H36-258-510462-1004 (the "subject policy"), with effective dates of December 6, 2010 through December 6, 2011. The subject policy provides coverage for Sinkhole Loss as follows:

**SECTION 1 - PERILS INSURED AGAINST**

The following perils are added:

**Sinkhole Loss**

a. Sinkhole Loss means structural damage to the building, including the foundation, caused by sinkhole activity. Contents coverage shall apply only if there is structural damage to the building caused by sinkhole activity.

(1) We will pay to stabilize the land and building and repair the foundation in accordance with the recommendations of a professional engineer and in consultation with you.

b. Sinkhole Activity means settlement or systematic weakening of the earth supporting such property only when such settlement or systematic weakening results from movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

The SECTION I - Earth Movement exclusion does not apply to this peril.

On May 17, 2011, while the policy was in effect, the Garcias made a claim with First Liberty for damage to the subject property that was consistent with sinkhole activity. First Liberty retained Rimkus Consulting Group to conduct a structural evaluation of the subject property. Rimkus produced a report, opining that the subject property did not exhibit structural damage "as defined in current Florida Statute 627.706." Rimkus also concluded that "the majority of the observed distress in the concrete flatwork was due to shrinkage of the concrete as it cured, as well as thermal related expansion and contraction, and was potentially exacerbated by differential movement of the slabs due to non-uniform soil support."

On August 23, 2011, First Liberty sent the Garcias a letter denying coverage for the subject damage based on Rimkus' findings. The Garcias then filed suit in state court for an alleged breach of the subject policy. The state court action was removed to this Court on April 10, 2012.

In addition to its answer and affirmative defenses, First Liberty filed a counterclaim for declaratory judgment. First Liberty's counterclaim asserts that the language of the subject policy provides no coverage for the damages claimed by the Garcias unless that loss includes "structural damage." Notably, the subject policy does not define the term "structural damage." Moreover, the subject policy does not purport to incorporate by reference any existing statutory definitions, nor does it include language expressly making changes to statutory definitions retroactively applicable to claims arising under the subject policy. However, First Liberty urges the Court to accept the 2011 amendment to the Florida statutory

scheme governing sinkhole insurance that added a statutory definition of "structural damage."

As noted above, this Court recently denied an identical summary judgment motion by Liberty Fire Insurance Company (8:12-c-v-950-JSM-MAP, Dkt. 17). For all the reasons discussed in that opinion, *Zawadzki*, 2012 WL 3656456, the Court reaffirms that the 2011 amendment does not retroactively apply to insurance policies that predate its enactment. Additionally, the Court again concludes that the phrase "structural damage" should be read according to its plain meaning as the court recently held in *Ayres v. USAA Casualty Insurance Company*, 2012 WL 1094321 (M.D. Fla. April 2, 2012). Therefore, "'structural damage' is defined as damage to the structure." *Zawadzki*, 2012 WL 365645, at *6.

It is therefore ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (Dkt. 13) is DENIED.

**DONE** and **ORDERED** in Tampa, Florida on October 29, 2012.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2012\12-cv-771.sumjud.frm